# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

SHARI ZONGOS, §
§
Plaintiff, §
§
versus § CIVIL ACTION NO. 5:12-1007
§
CAROLYN W. COLVIN, §
Acting Commissioner of §
Social Security, §
§
Defendant. §

## REPORT AND RECOMMENDATION

Shari Zongos ("Zongos") seeks review of an adverse decision on her application for disability-based Supplemental Security Income benefits under the Social Security Act.

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Congress directs courts, when reviewing acts of administrative agencies, to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all

errors and defects that do not affect any party's substantial rights"). Thus, judicial review is quite deferential to the Commissioner's presumed expertise.

Reviewing courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when the record contains substantial support for the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Similarly, reviewing courts cannot resolve evidentiary conflicts or appraise credibility of witnesses, including claimants. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Neither can reviewing courts overturn administrative rulings because they would reach different conclusions were the matter to come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

## II. Background

Zongos's application claims disability due to degenerative disc disease (back) and hip problems. (T. 180).[1] Administrative law judge, John M. Lischak, ("ALJ Lischak") denied Zongos's application. (T. 17-25). The Appeals Council declined review; Zongos then instituted this proceeding.

## III. Commissioner's Decision

ALJ Lischak determined that neither condition claimed by Zongos to be disabling constitutes a severe impairment. With respect to the *alleged* impairments (as well as carpal tunnel syndrome, headaches, and knee pain), ALJ Lischak concluded that although "briefly mentioned in the record, there is not enough documentation to show that these conditions rise to the level of a severe impairment." (T. 20). He reasoned that "[n]o treating source has indicated that the conditions . . . impose limits in the claimant's ability to engage

---

[1] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 9).

in basic work activities; therefore, these conditions are not severe within the meaning of the Regulations (20 CFR 416.921)." (*Id.*).

Based on medical evidence and Zongos's testimony, however, ALJ Lishcak found that Zongos has *other* impairments, chronic left basal joint pain and fibromyalgia, both of which are severe in that they produce more than minimal functional limitations. (T. 19). Further, these impairments reduce Zongos's capacity to perform work-related activities to "slightly less than the full range of light work." (T. 21). And, with such reduced residual functional capacity, Zongos can no longer perform her past relevant work as a department store stocker. (T. 24).

Finally, and relying on Medical-Vocational Rule 202.20, ALJ Lischak found that Zongos can still perform alternative work. (T. 24-25). Zongos, therefore, "has not been under a disability," and her claim was denied. (T. 25).

## IV.  Points of Alleged Error

Zongos's brief proffers four alleged errors:

1.  the ALJ erred by failing to classify Plaintiff's degenerative disc disease as a severe impairment;

2.  the ALJ's residual functional capacity finding is unsupported by substantial evidence;

3.  the ALJ's credibility determination is unsupported by substantial evidence; and

4.  the ALJ's Step 5 determination is unsupported by substantial evidence.

(Dkt. No. 11, pp. 1, 10-23). Under this district's practice, the parties marshal their arguments on these issues through competing briefs.

# V. Challenge to Non-Severity Finding

*A.    Severity Determinations*

Administrative law judges utilize a five-step sequential evaluation procedure.[2]   At Step 2, they determine whether claimants have "severe" medically determinable impairments.  *See* 20 C.F.R. § 404.1520(a)(4).  A claimant has the burden "to establish the existence of a sufficiently severe impairment to meet the requirements at step two." *Pennay v. Astrue*, No. 3:05-CV-0673 (FJS/DEP), 2007 WL 5465987, *8 (N.D.N.Y. Aug. 3, 2007), *report and recommendation adopted*, 2008 WL 4069114 (N.D.N.Y. Aug. 27, 2008); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

A "severe impairment" is "any impairment or combination of impairments which significantly limits . . .physical or mental ability to do basic work activities."[3]  *See* 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 416.921(a).  The threshold for meeting this standard is not high.  An impairment is severe when it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  Thus, a finding of "not severe" can be made only when medical evidence establishes a "slight abnormality" producing "no more than a minimal effect on an individual's ability to work." SSR 85–28, TITLES II AND XVI:  MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE, 1985 WL 56856, at *3 (SSA 1985).

---

[2]    The procedure is prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).  A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[3]    "Basic work activities" is defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b).  Factors relevant for evaluating severity of physical impairments include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *Id.*

In practice, therefore, severity analysis does no more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). When an impairment rises above a *de minimis* level, further analysis is warranted. *Id.* And, when multiple impairments are present, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. *Id.* at 1031.

B.    *Alleged Error*

Zongos maintains that ALJ Lischak erred in failing to classify her degenerative disc disease (back pain) as a severe impairment (Point 1). (Dkt. No. 11, pp. 10-12). ALJ Lischak declined to find it a severe impairment in part because no treating source opined that it limits her ability to engage in basic work activities. (T. 20).

Zongos points to medical evidence from which a finding of severity could have been made,[4] and to her own testimony regarding limiting effects of her back pain. Zongos argues that ALJ Lischak raised the severity bar too high. According to Zongos, there is no requirement that a *treating source* opine functional limitations in order for an impairment to be severe. In support of this assertion, Zongos cites SSR 96-3p.[5] Additionally, Zongos argues that it was unfair to impose such requirement when the only treating source statement is from a physician who treated Zongos exclusively for a different condition, *viz.,* basal joint arthritis. (Dkt. No. 11, pp. 10-12).

---

[4]    Zongos summarizes such evidence on page 11 of her brief. It includes a magnetic resonance imaging diagnostic finding that Zongos's thoracic spine has scoliosis, loss of disc height, and a right central disc protrusion that appears to indent the right anterior aspect of the spinal cord. (Dkt. No. 11, p. 11).

[5]    SSR 96-3p, TITLES II AND XVI: CONSIDERING ALLEGATIONS OF PAIN AND OTHER SYMPTOMS IN DETERMINING WHETHER A MEDICALLY DETERMINABLE IMPAIRMENT IS SEVERE, 1996 WL 374181 (SSA July 2, 1996).

## C.    Application

ALJ Lischak wrote carelessly.  The Commissioner's interpretive rulings require that severity determinations be based on *medical evidence*, but they do not dictate that such evidence be from a treating source.[6] This inadvertent error, however, is not cause for remand because it is harmless.

Had ALJ Lischak articulated the correct standard (by substituting "medical source" for "treating source"), the result would have been the same. Nothing in the medical evidence supports a finding that Zongos's degenerative disc disease currently causes any functional limitation of ability to perform work-related activities.  In absence of medical evidence to such effect, ALJ Lischak acted within his discretion in finding that Zongos's back condition does not amount to a severe impairment.

Second, any error was cured when ALJ Lischak found that other disorders (basal joint pain and fibromyalgis) constitute severe impairments, and then conducted a full, 5-step sequential analysis.[7] ALJ Lischak expressly

---

[6]    SSR 96-3p, 1996 WL 374181, at *2 ("A determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the *objective medical evidence* and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities....") (emphasis added); SSR 85-28, TITLES II AND XVI: MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE, 1985 WL 56856, at *4 (SSA 1985) (At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.).

[7]    *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n. 1 (2d Cir. 2010) (summary order) (noting, in *dicta*, no reversible error in finding disc herniation non-severe because administrative law judge identified other severe claims at Step 2 so that claim proceeded though the sequential evaluation process and all impairments were considered in combination); *see also McCartney v. Commissioner of Soc. Sec.*, Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D. Pa. May 8, 2009) ("Even if the Court was (*sic*) to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

acknowledged that he considered *all* of Zongos's impairments, *including impairments that are not severe*, when making a predicate assessment of residual functional capacity before considering Steps 4 and 5 of the sequential evaluation process. (See discussion of residual functional capacity in Section VI, *infra*.) Equally as important, his residual functional capacity finding accounts for *functional effects* of Zongos's degenerative disc disease. Giving Zongos the benefit of the doubt on that issue, he reduced her residual functional capacity to slightly less than light work (T. 23), and found Zongos unable to perform her past relevant work as a stocker due to its heavy lifting requirements. (T. 24).

Zongos's first point of error, therefore, cannot be sustained. ALJ Lischak may have erred technically when articulating his reason for finding Zongos's degenerative back disease as a non-severe impairment, but there was no substantive error affecting Zongos's substantial rights.

## VI. Challenge to Residual Functional Capacity Finding

Next, Zongos attacks ALJ Lischak's residual functional capacity finding (Point 2). Zongos articulates this point as a substantial evidence error. As argued, however, it alleges multiple failures to apply correct principles of law when weighing medical evidence. (Dkt. No. 11, pp. 12-19).

*A.    Residual Functional Capacity*

Before making findings at Steps 4 and 5 of the sequential evaluation procedure, administrative law judges make predicate determinations of "residual functional capacity." This abstruse term refers to what claimants can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Administrative law judges thus decide whether

applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. Descriptions and observations of limitations from all sources, including claimants and lay persons are admissible and relevant on this issue.[8]

In this instance, ALJ Lischak articulated Zongos's residual functional capacity as "slightly less than the full range of light work." (T. 21). Her only limitation is that she can handle, finger, and feel with her left hand only occasionally. *Id.*[9]

## B. Weighing Medical Opinion

Evidence from multiple sources often conflicts, thus requiring administrative law judges to make *credibility assessments*, that is, decide how

---

[8]    The Commissioner's regulation provides:

We will assess your residual functional capacity based on all the relevant medical *and other evidence*. . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. § 416.945(a)(3).

[9]    ALJ Lischak's residual functional capacity assessment, in its entirety, reads as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform slightly less than the full range of light work as defined in 20 CFR 416.967(b) in that the claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, sit and/or stand for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. The claimant is able to frequently reach overhead and occasionally handle, finger, and feel with her left hand. The claimant is able to frequently climb, balance, stoop, kneel, crouch, and crawl.

(T. 21).

much weight to give particular items of evidence.  Through various regulations and internal policy rulings, the Commissioner provides guidance in the form of protocols for determining credibility of subjective testimony,[10] medical opinions of "treating" sources,[11] opinions of "acceptable" medical sources,[12] and opinions of "other" medical sources."[13]  Generally, these protocols utilize similar formats. Testimony and other evidence are compared to objective factors that generally enhance or support credibility regarding the subject matter.  The closer the evidence correlates with such objective factors, the more likely its credibility.

## C.    ALJ Lischak's Weighting of Medical Evidence

When assessing Zongos's residual functional capacity, ALJ Lischak weighed opinions from four medical sources.  He gave "great weight" to opinions of Dr. Sandra Boehlert, M.D. (consultative orthopedic examiner), "significant weight" to opinions of Dr. Kevin Setter, M.D. (treating orthopedist) and Dr. Thomas Weiss, M.D. (non-examining medical expert in orthopedics who reviewed all of Zongos's medical records) and "no weight" to K. Novitske (state agency disability analyst).  (T. 23-24, 336-39, 341-46, 422-428, 441-50).  As for these sources, ALJ Lischak stated:

---

[10]    *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.929; SSR 96-7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996).

[11]    *See* 20 C.F.R. § 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[12]    20 C.F.R. § 416.913(a). "Acceptable medical source refers to one of the sources described in § 416.913(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources."  20 C.F.R. § 416.902.

[13]    "Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists.  20 C.F.R. § 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2.

. . . the undersigned gives *great weight* to the consultative report completed by Dr. Boehlert due to her programmatic expertise and because her report was based on a physical examination of the claimant. Her conclusions are also consistent with the longitudinal medical evidence in the record. The undersigned gives *significant weight* to the report completed by Dr. Setter due to his treating relationship with the claimant. The undersigned notes that full weight was not given to this report because he did not provide a complete assessment of the claimant's physical capabilities. *Significant weight* is also given to the report completed by Dr. Weiss due to his expertise and longitudinal review of the claimant's medical records. However full weight was not given to this report either because Dr. Weiss did not physically examine the claimant and the report appears to be partially based on a physical residual functional capacity assessment completed by a non-acceptable medical source. *No weight* is given to the physical residual functional capacity assessment completed by the State Agency analyst because the analyst is not an acceptable medical source and did not physically examine the claimant.

(T. 23-24) (emphasis added; exhibit references omitted).

## D. *Alleged Errors in Weighing Medical Evidence*

Zongos argues that ALJ Lischak erred by (1) failing to assign a specific weight to Dr. Setter's opinion and failing to apply the "treating physician rule;" (2) according great weight to Dr. Boehlert's "vague" opinions as to Zongos's limitations and by failing to recontact Dr. Boehlert to obtain an updated opinion; and (3) according significant weight to Dr. Weiss's opinions, which Zongos contends is unsupported by medical evidence. (Dkt. No. 11, p. 12).

## E. *Discussion*

As a threshold matter, *each* of the three orthopedic specialists assessed Zongos's functional capacity just about the same, and, as the table below reflects,

their collective assessments reflect capacity for a wide range of light work.[14] Zongos's complaints about relative weighting of their opinions constitute, in large measure, resourceful nitpicking. Nonetheless, her arguments are interesting, and there is enough colorable merit in each to warrant substantive review.

### 1. Alleged Error in Failing to Assign Specific Weight to Opinion

This argument is directed to opinions from treating source, Dr. Setter. It is based on *English v. Commissioner of Soc. Sec.*, which contains a statement that "the ALJ failed to state what *specific weight* he assigned to [treating

14

| Light Work<br>20 C.F.R. 416.967(b) &<br>SSR 83-10 | Dr. Setter<br>(T. 422-28) | Dr. Boehlert<br>(T. 336-39) | Dr. Weiss<br>(T. 441-50) |
|---|---|---|---|
| Lifting no more than 20 lbs. at a time with frequent lifting or carrying objects weighing up to 10 lbs. | Zongos can lift 20 lbs. occasionally and lift and carry 10 lbs. occasionally. | Zongos has moderate limitations to repetitive heavy exertion of the left hand | Zongos can lift and carry 10 lbs. frequently and up to 50 lbs. occasionally. |
| A good deal of walking or standing. | Zongos can reach overhead, reach in all directions, and push/pull with left hand frequently. | Zongos's gait and station are normal. She exhibits full muscle strength and a full range of motion throughout her arms and legs, but for a slightly limited range of motion in her right hip. She has mild limitations in bending, twisting, squatting, and heavy exertion in the standing position. | Zongos can sit, stand and/or walk for 6 hours each during the course of an 8-hr. workday. She can frequently climb stairs and ramps as well as balance, and occasionally climb ladders and scaffolds, stoop, kneel, crouch, and/or crawl. |
| Mostly sitting with some pushing and pulling of arm or leg controls. | Zongos can frequently reach as well as push/pull with her left hand. She can handle, finger and/or feel with left hand only occasionally. | Zongos has moderate limitations to repetitive heavy exertion of the left hand. | Zongos's fine and gross activity of the left hand is limited due to difficulty moving the left thumb secondary to pain. |

physicians'] opinions, *which was error*."[15]   There, an administrative judge *rejected* treating physician opinion with a terse statement  inadequate to make clear to subsequent reviewers the weight given to a treating source's medical opinion and reasons therefor.

*English* is inapposite here.  First, ALJ Lischak substantially *adopted* Dr. Setter's opinions.  The only aspect of Dr. Setter's opinion not adopted in the subsequent residual functional capacity assessment relates to Zongos's ability to lift and carry 10 pounds frequently, a matter beyond the scope of Dr. Setter's treatment relationship with Zongos for basal joint arthroplasty.   (T. 422).  Second, ALJ Lischak did state a specific weight afforded to Dr. Setter's opinions, *viz.*, "significant."  (T. 23-24).  While one may quibble that this is unclear, it is equivalent to weighting terminology used by the Commissioner,[16] and use of a numeric quantum (*e.g.*, 51%, 82%, *etc.*) would not illuminate the finding more clearly.  Third, ALJ Lischak articulated clear reasons why he gave less than full or controlling weight to Dr. Setter's opinions.   Dr. Setter did not provide a complete assessment of Zongos's capabilities.  (T. 24).

---

[15]        *English v. Commissioner of Soc. Sec.*, No. 6:05-CV-905 (LEK/GJD), 2008 U.S. Dist. Lexis 7762, at *14 (N.D.N.Y. Jan. 24, 2008) (Kahn, J.)(emphasis added).

[16]        The regulation and ruling cited in English use generic weighting descriptors such as "controlling," "special significance," "great," "more," and "less."   *See English*, 2008 U.S. Dist. Lexis 7762, at *14 (citing 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *5 (SSA July 2, 1996)).

## 2. Alleged Error in Failing to Follow Treating Physician Rule

This argument also focuses on Dr. Setter's opinions. Administrative law judges are required to give "controlling weight" to opinions of treating sources[17] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[18] This rule is not absolute, however, and, when controlling weight is *not* given to a treating source's opinion, the degree of weight to be given such opinion is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[19]

This is not a typical case wherein an administrative law judge elected to not credit opinions of a treating physician regarding functional effects of an illness or injury treated by the physician. Rather, ALJ Lischak gave "significant

---

[17] *See* 20 C.F.R. § 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[18] 20 C.F.R. § 416.927(c)(2).

[19] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(Aug. 24. 2012) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion"). This Regulation recently (March and August 2012) has been amended. Prior to the amendment on March 26, 2012, these two subsections were each numbered "(d)."

*See also,* SSR 06-03p, 2006 WL 2329939, at *4 ("Although the factors in 20 C.F.R. 404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" ).

weight" to Dr. Setter's opinions, and effectively gave "controlling weight" to Dr. Setter's opinions with respect to functional limitations emanating from the condition actually treated by Dr. Setter (basal joint pain). Dr. Setter opined that Zongos can handle, finger and/or feel with her left hand only occasionally, and ALJ Lischak included this limitation expressly into his residual functional capacity assessment.

ALJ Lischak did reject Dr. Setter's opinion that Zongos can lift and carry 10 pounds only occasionally. In so doing, ALJ Lischak did not disregard or fail to apply correct principles of law. The regulation lists "nature and extent of treatment relationship" as one factor to consider. *See* 20 C.F.R. § 416.927(c)(2)(ii). It also instructs administrative law judges to consider other significant factors. *See* 20 C.F.R. § 416.927(c)(6). Here, Dr. Setter's treatment relationship did not concern Zongos's ability to lift and carry weights. Nor did it involve a complete orthopedic assessment of Zongos's functional capacities as did the examination performed by Dr. Boehlert and the comprehensive medical review conducted by Dr. Weiss. ALJ Lischak, therefore, acted well within his discretion when electing not to afford controlling weight to this one aspect of Dr. Setter's opinion.

3. <u>Alleged Error in Giving Great Weight to Vague Opinion</u>

This argument attacks ALJ Lischak's decision to give "great weight" to the opinion of Dr. Boehlert, who conducted a one-time, comprehensive orthopedic examination of Zongos. ALJ Lischak gave Dr. Boehlert's opinions such weight because of her "programmatic expertise," her personal observations upon physical examination, and the fact that her opinions are consistent with "longitudinal" medical evidence in the record.

As reflected in the footnote table, *supra*, Dr. Boehlert opined that Zongos has various limitations that she described as "slight," "mild" and "moderate." Zongos argues that these descriptions are entitled to no weight because they are so vague as to preclude a rational inference that she can perform exertional requirements of light work. (Dkt. No. 11, pp. 15-17). Zongos cites district court cases in support of the proposition that a consultative examiner's use of broad terms such as "moderate" and "mild," without additional information, is insufficient for an inference that an individual can perform requirements of exertional levels of work.[20] *Id.* Zongos also argues that ALJ Lischak had a duty to recontact Dr. Boehlert for clarification and an updated opinion because Dr. Boehlert issued her opinion before Dr. Setter performed basal joint surgery. *Id.*

The first prong of Zongos's argument is appealing. Consultative examiners' use of imprecise and nebulous terms when describing functional limitations make it difficult for administrative law judges to derive therefrom an individual's residual functional capacity for specific exertional levels of work activities. And, it follows, reviewing courts face equally arduous challenges in deciding whether an administrative finding based thereon is supported by substantial evidence. Hence, vague descriptions of functional limitations always raise red flags, and, in many if not most instances, consultative examiners should be recontacted for clarification.

Failure to obtain such clarification, however, is not cause for an automatic remand. Specific accompanying information in an examiner's report may cure an intrinsic flaw in vague verbiage. In addition, use of terms like "mild" and "moderate" may pass substantial evidence muster when medical evidence shows

_____

[20]     Such cases stem from *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000).

relatively little physical impairment. *See Tankisi v. Commissioner of Soc. Sec.*, 521 Fed. App'x 29, 34 (2d Cir. 2013); *Waldau v. Astrue*, No. 5:11-cv-925(GLS), 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2012). Consequently, whether an administrative law judge's reliance on a consultative examiner's vague opinions is reversible error is contextual rather than *per se*. Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.

Considered in context, there is no compelling reason to conclude that Dr. Boehlert's consultative opinion is so vague as to merit no weight. Her particular underlying clinical findings (*e.g.*, normal gait and station, full muscle strength and range of motion, normal reflexes, full grip strength, intact hand and finger dexterity) amplify and clarify non-specific functional assessments. In addition, medical evidence reveals that, except for her left thumb (basal joint), Zongos has relatively little physical impairment. Consequently, this is not an instance requiring remand. *See Davis v. Massanari*, 00 Civ. 4330 (SHS), 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (while physician opinion may be so vague as to be useless on its own, facts underlying the opinion and other medical evidence can give it concrete meaning so that it may be substantial evidence).

Dr. Boehlert observed that Zongos exhibits a "slight" limitation in range of motion in her right hip, "mild" limitations in bending, twisting, squatting and heavy exertion in the standing position, and "moderate" limitations to repetitive heavy exertion of the left hand. Although the common understanding of all these terms is "not very severe," a reviewing court might well decide that an administrative law judge's reliance thereon to support a residual functional capacity assessment at the *heavy* or *medium* exertional levels would not satisfy the substantial evidence test. Here, however, ALJ Lischak assessed Zongos's residual functional capacity at *less than a full range of light work*. Given the

substantially-reduced level of exertion required for light work, there is no reason to worry that ALJ Lischak's election to afford great weight to Dr. Boehlert's opinions adversely affected a substantial right.

4.    Alleged Error in Giving Significant Weight to Dr. Weiss's Opinions

Dr. Weiss conducted a comprehensive review of all of Zongos's medical records, and based thereon, expressed opinions that Zongos remains capable of performing all demands of light work with the exception of "fine and gross activity of the left hand."  With respect to  other work-related activities (*i.e.,* lifting, carrying, sitting, standing, walking, climbing, and balancing), Dr. Weiss imposed no limitations.  He did, however, opine that climbing ladders and scaffolds, stooping, kneeling, crouching and crawling should be done only occasionally.

ALJ Lischak afforded these opinions "significant weight" due to Dr. Weiss's expertise and longitudinal review of all of Zongos's medical records.  He declined, however, to give Dr. Weiss's opinions full weight because Dr. Weiss did not physically examine Zongos, and he partially relied on a physical residual functional capacity assessment completed by a non-acceptable medical source.[21]

Zongos argues that, instead of meriting "significant weight," Dr. Weiss's opinion was entitled to "no weight" for a myriad of reasons.  First, Zongos asserts that Dr. Weiss's opinion regarding Zongos's capacity for lifting and carrying 10 pounds frequently (and 21 to 50 pounds occasionally) was based solely on a

---

[21]    Opinions of a disability analyst, who has no medical training, are not entitled to evaluation as medical opinions. *Campbell v. Astrue*, 713 F. Supp.2d 129, 139 (N.D.N.Y. 2010)(Mordue, J.)(citing 20 C.F.R. § 404.1527(a)(2)). "It is indeed an error to treat 'a disability analyst as a doctor.'" *Tankisi*,521 Fed. App'x at 34-35; *see also Hopper v. Commissioner of Soc. Sec.*, 2008 WL 724228, at *10 (N.D.N.Y. Mar. 17, 2008) (finding a disability analyst's opinions are "not a medical source opinion entitled to any weight.").

physical residual functional capacity assessment conducted by a disability analyst who is not an acceptable medical source, and whose opinions are entitled to no weight. Second, Dr. Weiss cited no medical evidence supporting his opinion that Zongos can sit, stand and walk for six hours in an eight-hour workday. Third, Zongos asserts that Dr. Weiss's opinion that Zongos can frequently climb stairs, ramps and balance but only occasionally climb ladders and scaffolds, or stoop, kneel, crouch and crawl, is based solely on Dr. Boehlert's consultative report which contains no direct references to any of these activities. Finally, Dr. Weiss hedged his opinion by noting that the medical evidence presented to him lacked a detailed evaluation of Zongos's knee and back impairments, such that the only "essential impairment" with a full evaluation involved Zongos's left thumb. (T. 450). Zongos argues that this was a tacit acknowledgment that Dr. Weiss lacked sufficient medical evidence on which to base his opinions. (*See* Dkt. No. 11, pp. 12-19).

These clever arguments are not without force. On balance, however, and considering the deferential nature of judicial review, they do not warrant reversal of ALJ Lischak's residual functional capacity finding. Dr. Weiss is an expert in Social Security disability evaluations.[22] As a medical doctor, he is an "acceptable medical source" capable of establishing the existence of a medically determinable impairment and giving a medical opinion.[23] As a consultative reviewing physician, he reviews complete medical records, draws his own conclusions and forms his own opinions; he is not bound to simply cite and

---

[22] State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.927(e)(2)(i).

[23] *See* 20 C.F.R. §§ 416.913(a), 416.927(a); SSR 06-03p, 2006 WL 2329939, at *2.

slavishly adopt opinions of others already existing in the records. The fact that he *cites* particular items of evidence does not warrant an inference that he did not *consider* the whole body of medical evidence. The fact that he relied *partially* on an opinion of a state disability analyst (not an "acceptable source") does not mean that he relied *exclusively* on that source when expressing an opinion regarding Zongos's physical residual functional capacity.

Comprehensive review of all of the medical evidence, including not only opinions of Drs. Setter, Boehlert and Weiss, but also objective diagnostic findings and treatment notes from Dr. P. Sebastian Thomas, M.D., Dr. Mary Abdulky, M.D., Leonard Marotta, M.D., Mike Sun, M.D., Upstate Medical Anesthesiology, physical therapy treatment notes, x-ray reports, and magnetic resonance imaging (MRI) interpretations, did not yield a single instance suggesting that Zongos's ability to sit, walk or stand is limited in *any* respect except for *heavy* exertion in the standing position. Dr. Weiss, therefore, could competently opine that Zongos can sit, stand and/or walk for 6 hours each during the course of an 8 hour workday while performing light work.[24]

The same can be said with respect to Dr. Weiss's opinion that Zongos can lift and carry 10 pounds frequently and up to 50 pounds occasionally. Nothing in the entire body of objective medical evidence hints that Zongos is limited in a manner that precludes her from engaging in the lifting-and-carrying exertional

---

[24]     Based on the same evidence, Dr. Weiss could form a competent opinion that Zongos can frequently climb stairs, ramps and maintain balance, and occasionally climb ladders and scaffolds, and stoop, kneel, crouch and/or crawl. (T. 447-48). On May 17, 2010, when Zongos met with orthopedist Mike Sun, M.D., complaining of low back pain, his physical examination revealed Zongos was able to "perform gait independently and does not have any focal neurological deficits." (T. 394). "Full range of motion is noted." (*Id*.). "However, there is pain with end range of motion in the lumbar and sacral area." (*Id*.). MRI views of the lumbar and thoracic spine showed some mild disk protrusion without any evidence of cord signal changes. (*Id*.).

demands of light work. While Dr. Setter's *opinion* was that Zongos can lift and carry 10 pounds *occasionally*, Dr. Weiss was not bound to agree, and nothing in the medical evidence, considered as a whole, impugns his opinion that Zongos can lift and carry 10 pounds *frequently*. *See Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) ("[t]he opinions of non-examining sources [may] override [a] treating sources' opinions provided they are supported by evidence of record.").

ALJ Lischak, therefore, did not err by failing to give Dr. Weiss's opinions no weight.

## VII. Challenge to Subjective Credibility Finding

Zongos asserts that ALJ Lischak's residual functional capacity finding also is flawed due to an error in assessing credibility of Zongos's testimony (Point 3). (Dkt. No. 11, pp. 19-22).

Pain is an important element in disability claims, and pain evidence must be thoroughly considered. *See Ber v. Celebrezze*, 332 F.2d 293, 298–99 (2d Cir. 1964). Testimony from claimants, therefore, is not only relevant, but desirable when determining residual functional capacity.

On the other hand, such testimony may be colored by a claimant's interest in obtaining a favorable outcome. Hence, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged.[25]

---

[25]  *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.929; SSR 96-7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996); SSR 96-4p, TITLES II AND XVI: SYMPTOMS, MEDICALLY DETERMINABLE PHYSICAL AND MENTAL IMPAIRMENTS, AND EXERTIONAL AND NONEXERTIONAL LIMITATIONS, 61 Fed. Reg. 34488-01, 34489, 1996 WL 362210 (SSA July 2, 1996).

It is rudimentary, therefore, that an administrative law judge is "not require[d] to accept subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, an administrative law judge "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* And, for judicial review purposes, nothing is more firmly established than that "[i]t is the function of the [Commissioner], not [the Courts], ... to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

A.    *Zongos's Self Assessment*

Zongos testified that she cannot work due to fibromyalgia, osteoarthritis, chronic pain and fatigue, as well due to being "stressed out" and depressed. (T. 78). She also complained of frequent migraine headaches. (T. 79, 84, 97). Zongos stated that she has difficulty sitting, has problems walking short distances, and cannot stand for more than five minutes continuously due to pain in her knees and back. (T. 97). Zongos testified that she is right-handed, can lift up to five pounds with her right hand, and up to only two pounds with her left hand. (T. 75, 96).

As part of her disability application, on December 6, 2009, Zongos completed and submitted a "Function Report - Adult."[26] (T. 199-209). Zongos stated that she takes care of her own personal hygiene and grooming needs; takes care of her two children; drives her children to and from school; drives her husband to and from work; cooks; does household cleaning; does laundry; shops

---

[26]    A form provided by New York State Office of Temporary and Disability Assistance Division of Disability Determinations.

for groceries; crochets and knits about twenty minutes per day; and socializes at home. (*Id.*). She also stated that she "cannot ride my bike, roller blade, and play tennis, ice skating, running, garbage, laundry basket, dishes, sweep the floor, or vacuum, ironing, cleaning the dishes, or the bathroom, cooking. I always have a lot of pain in my back, left hand, and legs." (T. 200). She asserted that some days she can walk "2 to 3 blocks" before she has to stop and rest due to her back and legs hurting. (T. 205). Other days, she claims she cannot do it at all. (T. 205). Further, in a an office visit to Upstate Medical Anesthesiology Group on October 1, 2010, treatment notes reflect that Zongos reported that she is able to "complete her household tasks with help from her daughter." (T. 409). When asked by her attorney in the administrative hearing conducted on December 13, 2010, if she went to church, Zongos testified that she had not been in about three years because "[t]hey do a lot of standing and a lot of sitting and a lot of kneeling inside the church and I can't physically do that." (T. 100).

B.    *ALJ Lischak's Credibility Assessment*

ALJ Lischak ultimately concluded that Zongos's subjective statements concerning intensity, persistence and limiting effects of her symptoms are only "partially credible." ALJ Lischak explained that in making his residual functional capacity finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4 and 96-7p." (T. 21). ALJ Lischak observed that Zongos's daily activities are fairly normal. (T. 22). He considered that Zongos's medical treatment has been "quite conservative," and that clinical findings and objective medical evidence in the record do *not* support Zongos's allegations of

significant physical functional limitations. *Id.* He noted Zongos's inconsistent work history, and concluded that it demonstrates a "weak attachment" to the work force which detracts from her credibility on the issue of whether she is unable to work due to impairments.[27] (T. 23).

## C. *Alleged Error*

Zongos complains that ALJ Lischak overlooked or ignored relevant portions of her subjective testimony when concluding that Zongos's daily activities belie her assertions that her symptoms are disabling. Zongos also refers the court to cases holding that one does not need to be a complete invalid to be disabled, and that claimants should not be penalized for enduring the pain of disability in order to care for themselves. (Dkt. No. 11, pp. 20-21).

## D. *Governing Precepts*

The Commissioner provides explicit guidance to help administrative law judges decide how much weight to give claimants' subjective self-evaluations. First, a formally promulgated regulation requires—once an impairment is identified—consideration of seven specific, objective factors that naturally

---

[27] Zongos's social security earnings reveal that she had no earnings from 1991-98; earned only $2,376.00 in 1999; and had no more than $504.00 in annual earnings from 2000-03. (T. 171). Zongos has not worked since 2005, but alleges that her disability did not commence until 2009. (T. 180).

support or impugn subjective testimony of disabling pain and other symptoms.[28]

Second, a ruling directs administrative law judges to follow a two-step process:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

*See* SSR 96-7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996). The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective

---

[28] An administrative law judge must evaluate a claimant's symptoms, including pain, based on the medical evidence and other evidence, including he following factors:

(i) claimant's daily activities;
(ii) location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v) treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*[29]

## E.  Application

It was not legal error for ALJ Lischak to take into account Zongos's limited work history as a factor in assessing credibility of her testimony regarding functional effects of her symptoms.  *See Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998).  Further, the mere fact that ALJ Lischak did not *mention* a particular item of Zongos's testimony regarding daily activities does not permit an inference that such evidence was not *considered.*[30]  Rather, ALJ Lischak made clear that in making his residual functional capacity finding, he considered all symptoms "*based on the requirements of 20 C.F.R. 404.1529 and 416.929 and 96-7p.*"  (T. 21) (emphasis added).  This reflects his awareness of and intention to employ the objective factors identified in the Regulations and the two-step process required by the applicable Ruling.

And, upon independent examination, ALJ Lischak's decision confirms that he did explicitly consider factors outlined in the Regulations, to the extent there was evidence thereof, including objective findings and activities of daily living. (T. 21-24).  For instance, ALJ Lischak noted her daily activities; conservative

---

[29]  Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when administrative law judges reject claimants' testimony of pain and limitations, they must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).

[30]  *See Brault v. Social Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted.") (internal quotations and citation omitted); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

medical treatment; and mild findings on x-ray and MRI. (T. 21-23). He provided explicit reasons for finding Zongos's subjective complaints not supported. (T. 21-24). Thus, there is no structural legal error in ALJ Lischak's approach to assessing credibility of Zongos's subjective testimony regarding persistence, intensity and limiting effects of her symptoms.[31]

All reasons stated for finding Zongos's subjective testimony only partially credible are plausible and objectively sufficient to support the credibility assessment. There is no basis, moreover, for the court to conclude that ALJ Lischak improperly "cherry-picked" only evidence supporting his residual functional capacity while ignoring contradictory evidence from the same credible source. ALJ Lischak did not cite only evidence he found favorable to his residual capacity finding.

The record is replete with treatment notes reporting normal range of motion and full strength in both her upper and lower extremities. Moreover, objective criteria (MRIs and x-rays) show only mild disk bulging with no significant stenosis. The treatment note that Zongos complains of being omitted by ALJ Lischak (reports by history that she is able to complete household chores with help from her daughter) also states that "[t]he pain does not prevent her

---

[31]     Even when an administrative law judge does not undertake a precise step-by-step exposition of the factors articulated in 20 C.F.R. § 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that []he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 416.929(c) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'") (quoting *Snyder v. Barnhart*, 323 F. Supp.2d 542, 546 (S.D.N.Y. 2004)).

from taking part in social activities." (T. 409). Further, upon physical examination that day, Zongos's gait and station were normal, allowing her to undergo exercise testing and/or participate in an exercise program. (T. 410). Thus, if ALJ Lischak had been seeking to cherry-pick out only favorable evidence, he would have highlighted these additional parts of that record. Likewise, ALJ Lischak did not question Zongos's veracity in testifying that she was physically unable to attend church for 3 years (since approximately 2007) yet she reported to Dr. Marotta in 2009 that she had taken up ice skating and walked to the mall. (T. 100, 364).

All reasons for only partially crediting Zongos's testimony have evidentiary bases that satisfy the highly deferential "more than a scintilla" substantial-evidence standard.[32] There is no basis, therefore to reverse the Commissioner's decision because of a legal or evidentiary error in assessing Zongos's credibility.

## VIII. Challenge To Step 5 Finding

At Step 5, the Commissioner must show that a claimant whose residual functional capacity does not allow performance of past relevant work can, nevertheless, do alternative work existing in the national economy. Generally, the Commissioner elicits or consults two principal sources of extrinsic evidence. First, witnesses qualified as "Vocational Experts" may testify as to whether jobs

---

[32] "Substantial evidence" is a term of art meaning less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 378, 401 (1978); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

exist for a person with the claimant's precise abilities.[33] Second, a United States Department of Labor publication titled *Dictionary of Occupational Titles* ("DOT") can assist in determining when a claimant's residual work skills can be used in other work and the specific occupations in which they can be used.[34]

In limited circumstances, administrative law judges may take administrative notice of disability *vel non* by adopting and applying findings published in the "*Medical—Vocational Guidelines*" commonly called "*the grids*."[35] *See Roma v. Astrue*, 468 Fed. App'x 16, 20–21 (2d Cir. 2012); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When only exertional impairments are in play, and findings of residual functional capacity, age, education, and previous work experience coincide with grids parameters, the Commissioner may directly apply the grids to determine whether work exists in the national economy which claimants can perform. *See Martin v. Astrue*, 337 Fed. App'x 87, 91 (2d Cir. 2009); *Thompson v. Barnhart*, 75 Fed. App'x 842, 844 (2d Cir. 2003) (Commissioner can meet Step 5 burden "by resorting to the applicable medical-vocational guidelines (the grids)"); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

---

[33]     *See* 20 C.F.R. § 416.966(e); *see also* SSR 00-4p, TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000).

[34]     *See* 20 C.F.R. § 416.966(d)(1); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2.

[35]     The grids are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. "The grids take into account a claimant's RFC, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). Ultimately, the grids yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1567(a)).

When claimants suffer from nonexertional impairments[36] (solely or in addition to exertional impairments), administrative law judges may consult and utilize the grids as a "framework" for evaluating whether nonexertional impairments result in disability.[37] Generally, framework analysis involves (a) consulting the grids with respect to the available occupational base given a claimant's exertional capacity, age, education, work experience and transferability of skills, and (b) determining how much that occupational base is further eroded or diminished by an individual's nonexertional limitations and/or environmental restrictions.[38]

## A.    ALJ Lischak's Framework Analysis

ALJ Lischak determined that Zongos is not disabled because she retains residual functional capacity to perform work which exists in significant numbers in the national economy. (T. 24-25). ALJ Lischak did not elicit expert vocational

---

[36]    "Nonexertional limitations" are "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect [ing] only your ability to meet ... demands of jobs other than ... strength demands...." *See* 20 C.F.R. § 416.969a(c)(1). Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be nonexertional. SSR 96-9p, DETERMINING CAPABILITY TO DO OTHER WORK, IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, 61 Fed. Reg. 34478, 34481 (July 2, 1996).

[37]    *See* SSR 83-12, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK—THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING EXERTIONAL LIMITATIONS WITHIN A RANGE OF WORK OR BETWEEN RANGES OF WORK, 1983 WL 31253 (SSA 1983); SSR 83-14, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK—THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL IMPAIRMENTS, 1983 WL 31254 (SSA 1983); SSR 85-15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK—THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857 (SSA 1985); *see also Washington v. Astrue*, No. 5:12-cv-39 (GLS), 2012 WL 6044877, at *5 (N.D.N.Y. Dec. 5, 2012) (describing framework analysis in a case involving a claimant with only a nonexertional impairment).

[38]    *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

testimony on this point. Rather, he found that testimony of a vocational expert was unnecessary because Zongos's sole nonexertional limitations (occasionally handling, fingering, and feeling with left hand) does not significantly diminish her ability to perform a full range of employment indicated by Medical-Vocational Guidelines.

ALJ Lischak then considered Zongos's residual functional capacity and vocational factors in conjunction with the Medical-Vocational Guidelines . (*Id.*). He determined that Grid Rule 202.20 directs a finding of "not disabled" for claimants having the same residual functional capacity and vocational factors as does Zongos. He also concluded that Zongos's sole nonexertional limitation does not significantly erode her occupational base. (T. 25). Hence, ALJ Lischak applied Grid Rule 202.20 as a framework, and determined that Zongos is not disabled. (*Id.*).

B.    *Alleged Error*

Zongos contends that ALJ Lischak's Step 5 determination is not supported by substantial evidence (Point 4) because it is not based on expert vocational testimony. Devoting only a single page of argument to this point, Zongos first states in conclusory fashion that errors at Step 2, and errors in weighing medical evidence and Zongos's subjective testimony when determining residual functional capacity "render the Step 5 decision unsupported by substantial evidence." Second, Zongos argues that she has significant nonexertional limitations that required assessment by a vocational expert. These limitations are argued as being limitation in bending, twisting and squatting (as opined by Dr. Boehlert) and a limitation to occasionally climbing ladders and scaffolds,

stooping, kneeling, crouching and crawling (as opined by Dr. Weiss). (*See* Dkt. No. 11, pp. 22-23).

Since ALJ Lischak did not commit reversible errors at Step 2 or when assessing medical and subjective evidence in connection with residual functional capacity, the first prong of Zongos's attack on the Step 5 finding falls under its own weight. No further analysis is necessary.

As for the second prong, it surely is offered tongue-in-cheek since Zongos argued earlier that opinions of Dr. Boehlert and Dr. Weiss are entitled to no weight. ALJ Lischak recognized only one nonexertional limitation (occasional handling, fingering, and feeling with her left hand), and properly determined it does not significantly erode the occupational database of unskilled light work. (T. 24-25). ALJ Lischak cited SSR 83-14 which provides that, "many unskilled light jobs do not entail fine use of the fingers . . . rather, they require gross use of the hands to grasp, hold, and turn objects."[39] Dr. Boehlert found that Zongos has "intact" hand and finger dexterity with full bilateral grip strength. (T. 337). In addition, other evidence of record regarding Zongos's daily activities aptly demonstrates Zongos's ability to perform fine and gross movements effectively.

ALJ Lischak properly found that Zongos's occupational base at a light level of work is maintained such that jobs exist in significant numbers in the national economy that she could perform. Consequently, ALJ Lischak's finding of "not disabled" was appropriately directed by of Medical Vocation Rule 202.20. There was no error in ALJ Lischak's failure to obtain testimony from a vocational expert.

---

[39]     SSR 83-14, 1983 WL 31254, at *4.

## IX.  Recommendation

The Commissioner's decision denying disability-based benefits should be **AFFIRMED**.

## X.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___29___ day of _____October_____ 2013.

*Earl S. Hines*

_____
Earl S. Hines
United States Magistrate Judge